IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-00250-NRN

DAVID A. TRIFILETTI, an individual,

Plaintiff,

v.

EGG STRATEGY, INC., an Illinois corporation,

Defendant.

**ORDER ON DEFENDANT EGG STRATEGY, INC.'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 43)**

**N. Reid Neureiter
United States Magistrate Judge**

This matter is before the Court for all purposes upon the consent of the parties, ECF No. 22, and an Order of Reference by Chief Judge Brimmer pursuant to 28 U.S.C. § 636(c), ECF No. 24. Now pending before the Court is Defendant Egg Strategy, Inc.'s ("Egg") Motion for Summary Judgment, filed January 8, 2025. ECF No. 43. Plaintiff David Trifiletti filed an opposition. ECF No. 45. Egg filed a reply. ECF No. 48. The Court held a motion hearing on March 5, 2025. ECF No. 52.

I.  **Factual Background**[1]

This recitation of facts is drawn from the materials submitted in the summary judgment briefing. The Court views all the facts in the light most favorable to Trifiletti as the non-moving party.

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Trifiletti was hired by Egg as General Manager in 2014. Trifiletti negotiated the terms of his employment directly with Jonathan Rodd, Egg's then-President. Trifiletti emailed Rodd on August 28, 2014 to discuss the inclusion of "separation language" and "severance terms" in the contract. Egg made a written offer of employment (the "Offer Letter"), dated August 29, 2014, to Trifiletti, for its General Manager position, which Trifiletti signed and accepted on September 4, 2014. The Offer Letter states that Trifiletti would be paid an annual base salary of $225,000,

> plus an annual bonus targeted at 33% of your annual base salary . . . provided, however, that the granting and amount of a bonus is based on Egg management's subjective assessment of your performance on metrics including those mentioned above, and *also is dependent on overall Egg company performance and financial health*. The potential to exceed the described bonus threshold exists, based upon exceptional performance (again as evaluated and at the discretion of Egg Management).

ECF No. 43-2 at 1 (emphasis added).

In conjunction with the Offer Letter, Egg presented Trifiletti with an "Agreement for Separation Pay Upon Termination of Employment" ("Agreement for Separation Pay"), also dated August 29, 2014, which Trifiletti accepted and signed on September 4, 2024. The Agreement for Separation Pay states that "in the event of [Trifiletti's] termination by the Company without Cause (as defined below) or by you for Good Reason (as defined below) the Company will make certain separation payments to you." The Agreement for Separation Pay provides that if Egg terminated Trifiletti's employment without Cause, or if Trifiletti terminated his employment for Good Reason, after one full year of employment, he would "*receive severance pay* equal to *one month's salary for each year of service plus a pro rata payout of your annual bonus potential*, to be paid on your last day of employment." ECF No. 43-3 at 1 (emphasis

2

added). The Agreement for Separation Pay refers to these payments as "severance payments." *Id.* at 2. This contract term regarding a pro-rated, accrued bonus if terminated without cause was unique to Trifiletti; no one else at Egg had a similar provision.

Trifiletti worked for Egg from September 2014 until October 2022, rising from his initial role as General Manager to become the Chief Operating Officer and a member of its Executive Leadership Team.

Sometime in 2018, Egg proposed an amended employment contract as part of a broader effort to renegotiate and align its executives' employment contracts. However, Trifiletti opted not to execute a new employment agreement in 2018, so his 2014 documents—including the Agreement for Separation Pay—remained his operative employment agreements.

In some years, such as for FY2020, Egg awarded Trifiletti a bonus in excess of his annual bonus target while in other years, such as for FY2018, Trifiletti's annual bonus came in below his annual bonus target. In 2022, Egg's company-wide performance did not meet expectations and budget projections, which resulted in a headcount reduction that the leadership team began planning in August 2022. In addition to the reduction-in-force, Egg did not award annual bonuses to any employees for FY2022 or FY2023.

Egg terminated Trifiletti's employment without Cause as defined in the Agreement for Separation Pay, and his final date of employment with Egg was on October 14, 2022. At the time of his termination, Trifiletti's annual salary as Chief Operating Officer at Egg was $300,000 and annual bonus potential was 35% of his

annual salary—i.e., $105,000. Trifiletti was paid severance on his final date of employment in the amount of $200,000, in addition to his final paycheck containing his outstanding base salary and accrued, unused vacation. The $200,000 payment represented one month of Trifiletti's 2022 salary ($25,000) times eight (eight years working for Egg). Egg did not pay Trifiletti the "pro rata payout of [his] bonus potential . . . on [his] last day of employment." Egg contends that this is because Trifiletti's bonus potential was zero that year, because Egg ended up not making bonus payments.

Trifiletti brings Colorado Wage Act ("CWA"), breach of contract, and unjust enrichment claims against Egg for failing to pay him $87,500, the alleged pro-rated amount of his annual bonus potential. Egg has moved for summary judgment.

## II. Legal Standard

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Furthermore, a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

The moving party bears the initial responsibility of providing the court with the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving

party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Unsupported and/or conclusory allegations do not establish an issue of fact sufficient to defeat summary judgment. *MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005); *see also McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). Conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

"The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Ultimately, the Court's inquiry on summary judgment

is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52 (1986). However, "[i]f a party fails to . . . properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

III. **Analysis**

    a. **Whether "Pro Rata Payout of . . . Annual Bonus Potential" Constituted "Earned, Vested, and Determinable Wages or Compensation" under the CWA is Disputed**

As the Court discussed in its previous Order on Egg's Partial Motion to Dismiss, ECF No. 37, a central dispute in this case is whether the disputed "pro rata payout of [Trifiletti's] annual bonus potential" constitutes "earned, vested, and determinable wages or compensation" under the CWA. The CWA defines "wages" to include "[b]onuses or commissions earned for labor or services performed in accordance with the terms of any agreement between the employer and the employee." Colo. Rev. Stat. § 8-4-101(14)(a)(II). It also specifically *excludes* "severance pay" from the definition of "wages." *See id* § 8-4-101(14)(b). If the "pro rata payout of [Trifiletti's] annual bonus potential" constituted wages, then Trifiletti is entitled to three times the amount if Egg's failure to pay was willful, and two times the amount if it was not willful, plus reasonable costs and attorneys' fees. *See* ECF No. 37 at 4.

Egg argues that there is no dispute that the amount was a "severance payment," and points to multiple documents which refer to the payment as such. *See* ECF Nos. 43-5 (email from Trifiletti to Rodd asking to "discuss[] severance terms"); 43-9 (in the 2018 redlined version of Agreement for Separation Pay, which was never executed,

Trifiletti (with the advice of counsel) does not strike the references to both portions of the separation pay as "severance payments").

In contrast, Trifiletti argues that there is evidence in the record that Egg considered this payment to be an "accrued bonus." *See* ECF No. 45-5 at 1 (email from Wilshire to Verbeke describes the payment in Trifiletti's contract as "his accrued bonus").

As discussed in the Court's previous order, ECF No. 37 at 13–14, case law counsels that just because a payment was scheduled to be made on or around the date of termination, does not automatically mean the payment constitutes "severance" and not a "bonus." *See Rohr v. Ted Neiters Motos Co.*, 758 P.2d 186, 187–88 (Colo. App. 1988) (finding that car salesman's bonus was "earned" and therefore "became vested and determinable as of the date of termination, even though not due and payable for two and one-half months thereafter," and therefore was subject to the provisions of the CWA); *Hallmon v. Advance Auto Parts, Inc.*, 921 F. Supp. 2d 1110, 1120 (D. Colo. 2013) (denying summary judgment on CWA claim about an unpaid bonus by employee terminated two days before bonus payout, where bonus plan had specified an employee needed to be "an active Team Member at time of payout," in part because company could "avoid paying rightful wages to employees by conveniently terminating them shortly before their payday, contravening the public policy behind the [CWA]"); *McFadden v. Pioneer Nat. Res. USA, Inc.*, No. 04-cv-02595-WDM-PAC, 2007 WL 160990, at *6 (D. Colo. Jan. 17, 2007) (denying summary judgment on CWA claim over bonus based on an unwritten oral agreement to pay one year's salary as a bonus on change of control of company).

Accordingly, the Court finds that there is a genuine issue of material fact with respect to this issue, as there is evidence in the record supporting both Trifiletti's and Egg's interpretations.

### b.  Meaning of "Bonus Potential" is Disputed

The Court further finds there is a genuine dispute of material fact regarding the reasonable interpretation of the contract term "bonus potential."

Egg argues that "bonus potential" might be zero at any given time if the company was not on track to award bonuses that year. *See* ECF No. 43-8 at 2 (Wilshire interprets the term in an email to Trifiletti, stating, "There's no promise of a gold amount regardless of how the business is doing. That's why the word 'potential' is intentionally in there."). In contrast, Trifiletti argues that "Bonus Potential" means "the maximum bonus amount one can achieve," in his case, 35% at the time of his termination. ECF No. 43-8 at 1–2. Trifiletti cites two 2018 internal Egg emails in which Wilshire and Verbeke discuss how to interpret Trifiletti's Agreement for Separation Pay, which may indicate that they may have believed that "bonus potential" was not tethered to company performance. Wilshire writes, "[Rodd] told me that Trifiletti's original employment document had some language in it about his severance plan that gave him part *(or all?)* of his accrued bonus during the year he's released." ECF No. 45-5 at 1 (emphasis added). Verbeke responds,

> After the first year of employment, the agreement reads that he would receive one month of severance for each year of service and a pro-rata portion of his bonus at termination. . . . *The new agreement does not have a pro-rata bonus payout. We could add that to the agreement if we need to, although I think we should have some conditions, related to company performance at the date of termination.*

8

*Id.* (emphasis added). The Court finds that, at the summary judgment stage, there is a genuine dispute as to the meaning of "bonus potential" which is appropriately resolved by a jury. The Court also rejects Egg's argument that given two divergent plausible interpretations of the term "bonus potential," there was no meeting of the minds and therefore no enforceable contract.

## IV.     Conclusion

It is hereby **ORDERED** that Defendant Egg Strategy, Inc.'s Motion for Summary Judgment, ECF No. 43, is **DENIED**. The parties should prepare for trial.

Dated this 6th day of March, 2025.       BY THE COURT:

*[signature]*

N. Reid Neureiter
United States Magistrate Judge